UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA GREIFENSTEIN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12-cv-09235 |
| v. | ) ) ) | Judge Edmond E. Chang |
| THE ESTÉE LAUDER CORPORATION, INC., ESTÉE LAUDER, INC., and ORIGINS NATURAL RESOURCES, INC., et al., | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donna Greifenstein brought this putative class action against Defendants The Estée Lauder Companies Inc.,[1] Estée Lauder, Inc., and Origins Natural Resources, Inc. (collectively, "Origins"), Macy's, Inc., Sephora USA, Inc., and Dillard's, Inc. R. 1, Compl. Greifenstein alleges that Origins violated the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/1 *et seq.,* by falsely marketing and selling its product, Origins Plantscription Anti-aging Serum.[2] *See id.*

---

[1]This party is incorrectly captioned as "The Estée Lauder Corporation, Inc."

[2]The Court has jurisdiction under 28 U.S.C. § 1332(d)(2). This statute authorizes jurisdiction over any class action in which the matter in controversy exceeds $5,000,000, as long as any member of the class of plaintiffs is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A). Here, Greifenstein and Origins are citizens of different states; Greifenstein is a citizen of Illinois and the Origins companies are citizens of Delaware and New York, where they are incorporated and have their principal places of business, respectively. *See* Compl. ¶¶ 10, 12-14. Additionally, the amount in controversy could exceed $5,000,000, depending on the total sales of Plantscription serum, which retails for around $55 or $75 per bottle. *Id.* ¶ 21. Thus, it is a legal possibility for the value of this suit to meet the $5,000,000 threshold.

¶¶ 49-60. Origins moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 31.[3] For the following reasons, Defendants' motion is granted, but the dismissal is without prejudice.

**I. Background**

In evaluating this motion to dismiss, the Court accepts as true the complaint's factual allegations and draws reasonable inferences in Plaintiff's favor. *Ashcroft v. Al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2079 (2011). Origins manufactures, markets, and sells cosmetics products. *See* Compl. ¶¶ 12-14. In early 2011, Origins launched Origins Plantscription Anti-aging Serum, a new line of anti-aging cosmetics products that is specially formulated with *Anogeissus leiocarpus*, a tree bark found in West Africa. *Id.* ¶¶ 1, 19, 23. Origins began selling the Plantscription serum through various outlets. *See id.* ¶ 20. In marketing the serum, Origins advertised—in magazines, on the Internet, and on in-store displays—that the serum had the following properties: (1) it has "88% of the visible wrinkle-reducing power of a prescription"; (2) it is "clinically proven to help visibly repair 4 major signs of aging" "in just 4 weeks"; (3) it repairs "vertical fret lines" and "stubborn furrows"; and (4) it "help[s] rebuild natural collagen and elastin fibers," making skin "clinically firmer, smoother, and more lifted-looking." *Id.* ¶¶ 2, 4.

---

[3]After Macy's, Sephora, and Dillard's separately moved to dismiss, Greifenstein voluntarily dismissed those parties from the suit. R. 46. The Court therefore terminated their motion to dismiss [R. 34] as moot. R. 49.

In September or October of 2012, Greifenstein saw those advertisements on a Macy's in-store display in the Woodfield Shopping Mall (located in Schaumburg, Illinois). *Id.* ¶ 10. She purchased a one-ounce bottle of Plantscription serum for around $55. *Id.* Unfortunately, she was not happy with her purchase. She alleges that the wrinkle-repair claims are false, disproved by competent clinical evidence and based on flawed company-sponsored testing. *Id.* ¶ 22. She also alleges that had she known that the wrinkle-repair claims were false, she would never have purchased the serum in the first place. *Id.* ¶ 11. And she claims that Origins prices the serum at a premium over its own and over its competitors' products. *Id.* ¶ 39.

As a result, Greifenstein filed this lawsuit against Origins, claiming that its serum advertisements were fraudulent and deceptive in violation of the ICFA. *Id.* ¶¶ 49-60. She seeks either nationwide or Illinois class certification for her claim. *Id.* ¶¶ 40-48. In response, Origins moved to dismiss. R. 31.

## II. Standard of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right

to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the ICFA. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). Thus, Rule 9(b) requires that Greifenstein's complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citations omitted). Put differently, her complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441-42 (internal quotation marks and citation omitted).

### III. Analysis

Greifenstein alleges that Origins fraudulently misrepresented the wrinkle-reducing capabilities of the Plantscription serum in violation of the ICFA.

4

Under section 2 of the Act, "[u]nfair methods of competition and unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. So in order to bring a claim under the ICFA, Greifenstein must allege with particularity: (1) a deceptive act or practice by Origins, (2) Origins' intent that she rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to her (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) (citations omitted). Of these five elements, Origins does not challenge whether the second (intent) and third (commerce) elements are adequately pled. *See* R. 32, Defs.' Br. at 6-15. This dispute, then, is over whether Greifenstein has pled with particularity that Origins committed a deceptive act that proximately caused her actual damage.

### A. Proximate Cause

At the outset, under the ICFA and Rule 9(b), Greifenstein must plead proximate cause with particularity. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009) (citation omitted). Greifenstein's complaint alleges that she "*was exposed to and saw* Defendants' wrinkle repair claims at the point-of-sale by reading the in-store Product display located on the shelf right next to the Product." Compl. ¶ 10 (emphasis added). She then alleges that she "paid approximately $55 for a 1-oz bottle of Plantscription serum." *Id.* Greifenstein thus pleads that she personally saw the Plantscription advertisements and purchased the serum—with no intervening events in

5

between—which adequately alleges proximate cause. *Compare Oliveira*, 776 N.E.2d at 163-64 (affirming dismissal of ICFA claim because "plaintiff [did] not allege that he saw, heard or read any of defendant's ads, [so he] cannot allege that he believed that he was [deceived]"), *with Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. App. Ct. 1996) (affirming reinstatement of ICFA claim because plaintiffs "allege that their purchases occurred after the allegedly fraudulent statements, and the complaint contains no facts showing an intervening cause that would break the chain of proximate causation"). Greifenstein's complaint satisfies the proximate-cause element.

**B. Deceptive Act**

Next, Greifenstein's complaint must plead with particularity that Origins committed a deceptive act. *Oliveira*, 776 N.E.2d at 160 (citations omitted). Origins asserts that her complaint does not because it fails to identify what specific Plantscription advertisements allegedly deceived her, when and where she made her purchase, and how those advertisements are false (the "what," "when," "where," and "how"). Def.'s Br. at 5-12. The Court will address each argument in turn.

**1. Specific Alleged Misrepresentations**

Origins first contends that Greifenstein's complaint is factually deficient because it fails to plead with particularity what the alleged misrepresentations were. *See* Defs.' Br. at 6-8. Origins relies on two cases from this District for the principle that a plaintiff must identify specific product advertisements in her complaint. *See Ibarolla v. Nutrex Research, Inc.*, 2012 WL 5381236, at *3 (N.D. Ill. Oct. 31, 2012); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6,

6

2009). But the facts in those cases are different. In *Ibarolla*, a nutritional-supplement purchaser merely alleged that she purchased "one or more" of six named products; the court required her to plead which specific products she actually inspected and purchased because it was implausible that the manufacturer had marketed all six products identically. *See* 2012 WL 5381236, at *2. Similarly, in *Sears*, the complaint simply alleged that the plaintiffs relied on advertising for an entire line of tools. 2009 WL 937256, at *4. Because the complaint itself acknowledged that ads for certain tools within that line were not deceptive, the court held that the complaint was factually deficient for failing to identify which specific tool advertisements the plaintiffs viewed. *See id.* at *4, 6. So in both cases, the complaints impermissibly lumped together ads for an entire group of products—some ads possibly fraudulent, some not—without specifying which ads caused the plaintiffs to purchase which products.

In contrast, Greifenstein complains only about the advertising associated with a single, specific product—Plantscription Anti-aging serum. *See, e.g.*, Compl. ¶¶ 1, 10, 12-14, 19. And she specifically lays out the four alleged misrepresentations she viewed before making her purchase: (1) "88% of the visible wrinkle-reducing power of a prescription," (2) "clinically proven to help visibly repair 4 major signs of aging" "in just 4 weeks," (3) repairs "vertical fret lines" and "stubborn furrows," and (4) "help[s] rebuild natural collagen and elastin fibers," making skin "clinically firmer, smoother, and more lifted-looking." *Id.* ¶ 2. Although Origins takes issue with the complaint because it subsequently refers to these alleged misrepresentations collectively (and not verbatim) as the "wrinkle repair claims," *see* Def.'s Br. at 6, no case that Origins cites

7

holds that Rule 9(b) bars a complaint from referring to misrepresentations—after they are laid out in full—in shorthand. So when Greifenstein alleges, for example, that she "saw Defendants' wrinkle repair claims at the point-of-sale," Compl. ¶ 10, she alleges that she saw the alleged misrepresentations described earlier in her complaint, *see id.* ¶ 2.

## 2. Date and Location of Purchase

Second, Origins argues that the complaint fails to plead when and where Greifenstein bought the serum, relying on *Sefton v. Toyota Motor Sales, U.S.A., Inc.*, 2010 WL 1506709 (N.D. Ill. Apr. 14, 2010). Defs.' Br. at 11. But under *Sefton*, Greifenstein must plead when and where she *saw* the alleged misrepresentations, not when and where she *purchased* the serum. *See* 2010 WL 1506709, at *5 ("This paragraph is insufficient to satisfy Rule 9(b) for several reasons. First, it does not identify any specific communications, nor point to the particular signs, advertisements, or manuals that were responsible for the misrepresentation." (emphasis omitted) (citation omitted)). And her complaint pleads when she saw the alleged misrepresentations ("[i]n or around late-September or early-October 2012") and where she saw them ("by reading the in-store Product display located on the shelf right next to the Product at a Macy's store at the Woodfield Shopping Mall in Schaumburg, Illinois"). Compl. ¶ 10. Greifenstein's complaint thus pleads with particularity the "when" and "where" of an ICFA claim.

### 3. Falsity

Greifenstein's complaint, though, does not plead with particularity *how* the wrinkle-repair claims she identifies are false. In her response brief, she proposes two theories of falsity. She first argues that the wrinkle-repair claims lack substantiation—that they have "no competent clinical evidence" to support them despite representations that the claims were "clinically proven" and "proven by science." Compl. ¶ 24; *see also* R. 45, Pl.'s Resp. at 7. True, an advertisement may be fraudulent if the ad lacks substantiation, but only when the claim at issue implies that support—any support—exists for the claim when there is none. *Gredell v. Wyeth Labs., Inc.*, 854 N.E.2d 752, 756 (Ill. App. Ct. 2006); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001) ("[A] lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made." (citation omitted)). And Greifenstein's complaint itself alleges that substantiation exists for Origins' claims that the serum is "clinically proven" to reduce wrinkles. *See* Compl. ¶ 25 (alleging that Origins collaborated with the University of Strasbourg to test the serum). Greifenstein may quarrel that Origins failed to disclose the study's methodology and that Origins itself funded the study, *see id.*, but the mere existence of the study alone defeats her argument that Origins' wrinkle-repair claims lack substantiation. *See Gredell*, 854 N.E.2d at 756 ("Merely because a fact is unsupported by clinical tests does not make it untrue."). Despite Greifenstein's dissatisfaction with Origins' testing methods and funding, the complaint itself in effect concedes that substantiation does exist.

Greifenstein does not fare much better with her second theory of falsity, which is that "there is clinical evidence that the Products do not actually have the represented wrinkle repair benefits." Pl.'s Resp. at 7. In response, Origins contends that under *Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012, at *4 (N.D. Ill. June 21, 2012), Greifenstein must identify the specific studies referred to in the complaint; references to unspecified "clinical evidence" is not enough. *See* Defs.' Br. at 9. But that was not the precise holding in *Padilla*. There, a purchaser of glucosamine supplements alleged that unspecified clinical studies purported to show that Costco's supplements did not actually help "joint renewal and rejuvenation," yet he alleged that *different* advertising claims (that the supplement "nourishes joint and connective tissue" and "supports joint cushioning") were false. *See Padilla,* 2012 WL 2397012, at *4. Because of this mismatch, the court required the purchaser to plead a higher level of detail about how the identified claims were false—presumably by providing more factual detail about the unspecified clinical studies. *See id.*; *see also Padilla v. Costco Wholesale Corp.*, 2013 WL 195769, at *3-4 (N.D. Ill. Jan. 16, 2003) (dismissing the subsequently amended complaint because the findings of the newly cited studies still failed to connect to the representations actually appearing on the supplement product labels). *Padilla* thus does not exactly support the proposition that plaintiffs must specifically identify clinical research when that research evaluated the *same* product advertisements identified in their complaints. And Greifenstein does appear to have linked the research to the specified wrinkle-repair claims. *See, e.g.*, Compl. ¶¶ 11, 22.

In any event, it is clear that Greifenstein rests her falsity argument on the outcome of one specific clinical study. In her complaint, she alleges that the National Advertising Division (NAD), which is administered by the Better Business Bureau and is an investigative arm of the advertising industry's self-regulatory body, recently examined the four wrinkle-repair claims cited in her complaint. Compl. ¶ 26. Following its review, the NAD recommended that Origins discontinue claims suggesting that Plantscription serum provides comparable benefits to prescription anti-wrinkle products, and also recommended that it discontinue the use of terms such as "repair" because they "communicate a far broader performance benefit than the evidence in the record supports." *Id.* ¶ 27. Thus, Greifenstein argues that she does have specific clinical evidence that the wrinkle-repair claims identified in her complaint are false. *See* Pl.'s Resp. at 7-9.

Injecting the NAD study into the complaint, however, does not plead with particularity that Origins' wrinkle-repair claims are false. As an initial matter, the NAD study did not even address one of the main wrinkle-repair claims that Greifenstein alleges is false: that the serum helps to "rebuild natural collagen and elastin fibers," making skin "clinically firmer, smoother, and more lifted-looking." Compl. ¶ 2; *see also* R. 48-1, Defs.' Exh. 2, NAD Study at 1 (detailing the express Plantscription serum claims that the NAD actually studied). Because the NAD study is again the only basis in Greifenstein's complaint for how the "rebuild" wrinkle-repair claims are false, she has not pled their falsity with sufficient particularity.

As for the other wrinkle-repair claims, the NAD's findings that they were false were not the last word. Following the NAD study, Origins appealed to the National Advertising Review Board (NARB).[4] In January 2013—nearly two months before Greifenstein filed her response brief to Origins' motion to dismiss—the NARB overturned the majority of the NAD's findings. R. 48-1, Defs.' Exh. 4, NARB Appeal.[5] Specifically, the NARB decision reversed the NAD's conclusions regarding Origins' second and third wrinkle-repair claims ("visibly helps repair facial fret lines [and] furrows" and "clinically proven to help visibly repair 4 major signs of aging"). *See* NARB Appeal at 5-6. According to the NARB, "[b]ased on the overall context of the advertisement, and the fact that the product advertised is a cosmetic . . . the 'help

---

[4]The NARB is the appellate body for advertising industry self-regulation. When an advertiser disagrees with an NAD recommendation, the advertiser may appeal the decision to the NARB. *About the National Advertising Review Board*, THE ADVERTISING SELF-REGULATORY COUNCIL, http://www.asrcreviews.org/2011/08/about-the-national-advertising-review-board (last visited July 15, 2013).

[5]The Court may properly consider both the NAD and NARB studies, even at the dismissal-motion stage. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *188 LLC v. Trinity Indus.*, 300 F.3d 730, 735 (7th Cir. 2000) (internal quotation marks and citation omitted). Although Greifenstein contends that evaluating the merits of the NAD study is premature, Pl.'s Resp. at 8-9, it was she who injected the study into this case by relying on it and nothing else—yet did not attach it as an exhibit—to allege that the wrinkle-repair claims are false. *See* Compl. ¶¶ 26-27. She thus made the NAD study central to her ICFA claim. And the NAD study itself ends with Origins' "request[ng] that all of NAD's recommendations adverse to Origins be referred to an NARB panel for review." NAD Study at 9. Because the NAD study references the NARB appeal, that appeal is likewise fair game now. *Cf. 188 LLC*, 300 F.3d at 735 ("If Form 4 was indeed on the reverse side of the parties' contract or *otherwise was incorporated into it*, then Form 4 is relevant and was properly considered." (emphasis added)). And even if there had been no explicit reference in the NAD study to the upcoming appeal, Greifenstein cannot ask the Court to put blinders on and ignore the appellate review of the study; it would be like relying on a jury finding and ignoring its reversal on appeal.

visibly repair' language in the advertisements reasonably conveys the less dramatic message that the Plantscription products improve facial appearance with respect to lines and wrinkles." *Id.* at 6. And the NARB panel concluded that "Origins has provided a reasonable basis to support this message." *Id.* The NARB appeal—which again is referred to in the NAD study that Greifenstein's complaint relies upon—therefore directly contradicts her own allegations that the "visibly helps repair" language is false. *See, e.g.*, Compl. ¶¶ 2-3.

The NARB appeal does, it is true, provide Greifenstein a basis for a potential ICFA claim. The NARB actually upheld the NAD's findings on the first wrinkle-repair claim ("88% of the visible wrinkle-reducing power of a prescription"), but on a very narrow ground. The NARB found that test subjects using Plantscription serum did reduce facial lines and wrinkles by an amount that was around 88% of the wrinkle reduction achieved by subjects using a prescription anti-wrinkle product. NARB Appeal at 4. But this improvement did not last: the wrinkle reduction significantly *decreased* after 8, 12, 16, and 20 weeks. *Id.* Thus, the NARB concluded that the "88% of the visible wrinkle-reducing power of a prescription" language was false—not because the serum lacked 88% of the wrinkle-reducing power of a prescription, but because that claim, when read with the promise of wrinkle improvements "in just 4 weeks," "reasonably conveys a message that the promised effectiveness starts at 4 weeks and continues afterwards." *Id.* at 5. This message, according to the NARB, was "not supported by the record." *Id.* In other words, that particular representation is allegedly false because it implies that the serum's wrinkle-reduction power (which is 88% of

13

prescription strength) would continue beyond four weeks when it does not. Accordingly, any facts alleging that the "88%" claim is false specifically because the wrinkle-reduction power starts to wane after four weeks would satisfy Rule 9(b).

But the problem for Greifenstein is that her complaint does not allege that the serum *stopped* working after four weeks, or even that it stopped working *as well* after four weeks. Rather, the gist of her complaint—although she never says this outright (more on that below)—is that the serum did not work for her *at all*. *See, e.g.*, Compl. ¶ 3 ("In truth, however, Plantscription serum does not provide the represented wrinkle repair benefits, let alone in 'just 4 weeks' . . . ."); *id.* ¶ 38 ("As a result, Plaintiff and the Class members have been damaged in their purchases of this Product and have been deceived into purchasing a Product that they believed, based on Defendants' representations, was nearly as effective as prescription strength anti-aging products and would repair wrinkles and lines in just 4 weeks, when, in fact, it does not."). Such broad allegations reach beyond what the NARB appeal—which is, once again, central to the complaint's allegation of falsity—ultimately concluded was the *only* misrepresentation in the Origins wrinkle-repair claims (namely, that the serum's wrinkle-reduction effect lasts beyond four weeks). The complaint thus does not plead with sufficient particularity that the "88%" wrinkle-repair claim is false. Without a more nuanced theory of falsity, Greifenstein's complaint cannot stand in its current state.

## C. Actual Damage

It is worth discussing, for completeness's sake, Origins's argument that the complaint does not adequately plead damages. Under the ICFA and Rule 9(b), the complaint is required to plead with particularity how Greifenstein suffered actual damage from the alleged misrepresentations. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 858-59 (Ill. 2005) (citations omitted). Put differently, Greifenstein must allege that she was "harmed in a concrete, ascertainable way" by the defendant's deception, leaving her "tangibly worse off." *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 55 (Ill. 2005) (Karmeier, J., concurring).

Greifenstein contends that she was harmed because Origins denied her "the benefit of her bargain": she paid an unwarranted premium for the serum after seeing Origins' alleged misrepresentations. *See* Pl.'s Resp. at 13; Compl. ¶ 39. "Illinois courts have adopted the benefit-of-the-bargain rule . . . whereby damages are generally calculated by assessing the difference between the actual value of the property sold and the value the property would have had at the time of the sale if the representations had been true." *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196 (Ill. App. Ct. 2008) (citation omitted). Presumably, the value the serum would have had if the wrinkle-repair claims were *true* is the amount it currently retails for: $55 or $75. Compl. ¶ 21. Greifenstein alleges that she "would not have purchased Plantscription serum had she known that the wrinkle repair claims were false and misleading." *Id.* ¶ 37. So Greifenstein's actual-damages theory is that she would be entitled to a refund of the $55 purchase price, because she would not have bought the serum absent the false

wrinkle-repair claims. In light of the fact that Greifenstein alleges that the serum simply did not work for her at all, the allegation that she would not have bought the serum is enough to allege (proof would be another matter) actual damages.

### IV. Conclusion

For the reasons discussed above, Greifenstein's complaint does not plead the deceptive-act element with the particularity that Rule 9(b) demands. Origins' motion to dismiss [R. 31] is therefore granted.

Dismissal, however, shall be without prejudice. The Court ought to "freely give leave [to amend the complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2), especially at this stage in the litigation.[6] And although the current complaint is factually deficient in the ways discussed above, it is possible that Greifenstein could offer an amended complaint—if Rule 11 obligations allow it—that is sufficient. Greifenstein's complaint is accordingly dismissed without prejudice. If she wishes to file an amended complaint, she must do so on or before August 15, 2013. If no amended complaint is filed by that date, then this dismissal shall convert to dismissal with

---

[6]Although Origins argues that *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05-cv-03004 (N.D. Ill. Jan. 17, 2007), R. 33, supports dismissal with prejudice here, that order denied a motion to *amend* a dismissal with prejudice. So that motion was brought after judgment had already been entered. *See id*. *Scott* thus does not bear heavily when deciding whether to dismiss without prejudice *before* the entry of judgment, and in any event is not controlling.

prejudice as of that date without further order of the Court. The status hearing of July 29, 2013 is reset to August 21, 2013 at 10 a.m., to track the case.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 26, 2013